RECEIPT #  
AMOUNT $  
SUMMONS ISSUED  
LOCAL RULE 4.1  
WAIVER FORM  
MCF ISSUED  
BY DPTY. CLK  
DATE 6 8-05

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
FILED
Clerk's Office
USDC, Mass.
Date 6|6|05
By L A Q
Deputy Clerk
```

PETER GACICIA, individually and on behalf :
of a class of similarly situated persons,
                                          :
                                          :
                              Plaintiff,  :
                                          :
        vs.                               :
                                          :          Civil Action No. _____
GAF BUILDING MATERIALS                    :
CORPORATION, GAF CORP. and SAMUEL :
HEYMAN,                                   :
                                          :
                              Defendants. :

# 05 CV 11204 WGY

## NOTICE OF REMOVAL                    MAGISTRATE JUDGE Bowle

TO:     United States District Court for the District of Massachusetts

        Pursuant to 28 U.S.C. § 1441, *et seq.*, Defendants Building Materials Corporation of

America ("BMCA") (improperly designated in the Complaint as GAF Building Materials

Corporation and GAF Corp.)[1] and Samuel Heyman (collectively referred to herein as

"Defendants") hereby remove the state court action, *Peter Gacicia v. GAF Building Materials*

*Corporation, et al*, Civil Action No. 05-493, from the Superior Court of Massachusetts,

Middlesex County, to the United States District Court for the District of Massachusetts, and

allege as follows:

        1.      On February 11, 2005, plaintiff (individually and on behalf of a proposed class

of similarly situated persons) filed a Complaint in the Superior Court, Department of the Trial

---

[1]     As a result of various corporate transactions, G-I Holdings, Inc. is the successor by merger to GAF
Building Materials Corporation and GAF Corporation. G-I Holdings, Inc. is now a debtor in a Chapter 11
bankruptcy proceeding pending in the U.S. Bankruptcy Court for the District of New Jersey. Any action against G-
I Holdings, Inc. as successor by merger to GAF Building Materials Corporation and GAF Corporation (who are not
parties to this removal) violates the automatic stay pursuant to 11 U.S.C. § 362.

Court for the Commonwealth of Massachusetts, County of Middlesex, Civil Action No. 05-493. (A copy of the Complaint is attached hereto as Exhibit A).

2.    A copy of the Summons and Complaint was sent by certified mail to 1361 Alps Road, Wayne, NJ 07470 on May 9, 2005.[2]  (A copy of the Summons is attached hereto as Exhibit B).

3.    Because this Notice of Removal is being filed within 30 days of the date on which the Complaint was sent to Wayne, New Jersey, it is timely filed pursuant to 28 U.S.C. § 1446(b).

4.    Defendants BMCA and Samuel Heyman are the only parties joined as defendants.

5.    There is federal diversity jurisdiction over this action and removal of this action is proper pursuant to the provisions of P.L. 109-02, 119 Stat. 4 (the "Class Action Fairness Act" or the "Act"), codified at 28 U.S.C. §§ 1332(d) and 1453 because: (1) the putative class action consists of at least 100 proposed class members; (2) the citizenship of at least one proposed class member is different from that of Defendants BMCA and Samuel Heyman; and (3) the matter in controversy, after aggregating the claims of the proposed class members, allegedly exceeds $5 million, exclusive of interest and costs.[3]

---

[2]    The Summons and Complaint was improperly addressed to "Samuel Heyman, President to Accept Service for GAF Building Materials Corporation, 1361 Alps Road, Wayne, NJ 07470." Mr. Heyman is not an officer of G-I Holdings, Inc., successor by merger to GAF Building Materials Corporation. Moreover, Mr. Heyman does not have offices in Wayne, New Jersey and did not accept service.

[3]    The Act applies to this action because the action was "commenced" in federal court upon removal. *Magerer v. John Sexton & Co.,* 912 F.2d 525, 529 (1st Cir. 1990) (federal jurisdiction determined at time of removal); *Lorraine Motors, Inc. v. Aetna Cas. & Sur. Co.,* 166 F. Supp. 319, 323 (E.D.N.Y. 1958) ("commenced" means the institution in federal court of a case removed from a state court); *Cedillo v. Valcar Enterprises & Darling Delaware Co.,* 773 F. Supp. 932, 939 (N.D. Tex. 1991) (federal jurisdiction is determined on the date on which jurisdiction is invoked).

-2-

(a)     In the Complaint, plaintiff alleges that he represents himself and a proposed nationwide class. This putative class would consist of at least one hundred class members.

(b)     In the Complaint, plaintiff alleges that he resides in the Commonwealth of Massachusetts. Upon information and belief, at all relevant times, the named plaintiff is, and was, a citizen of the State of Massachusetts.

(c)     At all relevant times, defendant BMCA is, and was, a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Wayne, New Jersey, and , accordingly, is a citizen of Delaware and New Jersey.

(d)     At all relevant times, defendant Samuel Heyman is, and was, an individual and a resident of the State of New York.

(e)     Without admitting, and expressly denying, the validity of plaintiff's causes of action, the matter in controversy, after aggregating the claims of the proposed class members, allegedly exceeds $5 million, exclusive of interest and costs. In the Complaint, plaintiff alleges that Defendants provided defective shingles that were used in the roof systems of "hundreds of thousands" of putative class members. Plaintiff contends the shingles have deteriorated and seeks the cost of repairing or replacing the shingles, diminution of property value, and other consequential and incidental damages, including treble damages.[4]  In cases such as this when the plaintiff has not pled a specific amount of damages, a court can determine that removal was proper if it is apparent from the Complaint that the alleged amount in controversy exceeds the jurisdictional requirement. *See, e.g., Marcel v. Pool Co., 5 F.3d 81, 84 (5th Cir. 1993).*

---

[4]     Defendants do not concede that the named plaintiff or any proposed class member would be entitled to such relief or any of the relief sought in the Complaint. However, the plaintiff's "claim, whether well or ill founded in fact, fixes the right of the defendant to remove." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938).

-3-

6. In addition, there is federal jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity among the parties and despite the plaintiff's attempt to divest the federal court's jurisdiction by claiming that damages will not exceed \$50,000, the plaintiff has not stipulated or otherwise formally committed that under no circumstances would plaintiff or any proposed class member seek or accept more than the \$75,000 jurisdictional amount in controversy. *See, e.g., Gabrielle v. Allegro Resorts Hotels*, 210 F.Supp. 2d 62, 66 (D.R.I. 2002) (plaintiff's attempt to divest federal court of jurisdiction by claiming that damages would not exceed jurisdictional amount deemed ineffective because plaintiff failed "to stipulate or otherwise formally commit that under no circumstances would [plaintiff] seek or accept more" than \$75,000).[5]

7. Finally, there is federal jurisdiction over this matter because plaintiff's Magnuson Moss Warranty Act claim raises a federal question pursuant to 28 U.S.C. § 1331.

8. By this Notice of Removal, Defendants do not waive, and expressly reserve, their right to contest service of process, personal jurisdiction, and the sufficiency of the Complaint.

9. The United States District Court for the District of Massachusetts embraces the county in which the state court action is now pending, and thus, this Court is a proper venue for this action pursuant to 28 U.S.C. § 101.

10. In accordance with Rule 81.1 of the Local Rules of the United States District Court for the District of Massachusetts, the Defendants will, within thirty (30) days, file with this Court attested copies of all records, proceedings and docket entries in the state court.

---

[5]     Again, Defendants do not concede that the named plaintiff or any proposed class member would be entitled to such relief or any of the relief sought in the Complaint. However, the plaintiff's "claim, whether well or ill founded in fact, fixes the right of the defendant to remove." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938).

-4-

11.     Upon the filing of this Notice of Removal, and pursuant to 28 U.S.C. § 1446(d), Defendants shall promptly give written notice to plaintiff's attorney and shall file a copy of this Notice with the Clerk of the Superior Court, Department of the Trial Court in the Commonwealth of Massachusetts, Middlesex County.

**WHEREFORE,** Defendants respectfully remove this action from the Superior Court, Department of the Trial Court, Middlesex County, Massachusetts, to this Court, and proceed in this Court as an action properly removed thereto.

DATED this **6** day of June, 2005.

Respectfully submitted,

**Building Materials Corporation of America and Samuel Heyman**

By their attorneys,

Dennis M. Duggan, Jr., P.C. (BBO #137460)
Jonathan Sablone (BBO # 632998)
Stephen M. LaRose (BBO # 654507)
Nixon Peabody LLP
100 Summer Street
Boston, MA 02110
(617) 345-1000

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was sent by First Class Mail this **6** day of **June**, 2005 to:  Kenneth G. Gilman, Esq., Gilman & Pastor, 999 Broadway, Stonehill Corporate Center, Suite 500, Saugus, MA 01906 and the Clerk of the Superior Court in Middlesex County, Massachusetts.

**Building Materials Corporation of America and Samuel Heyman**

By their attorneys,

Dennis M. Duggan, Jr., P.C. (BBO #137460)
Jonathan Sablone (BBO # 632998)
Stephen M. LaRose (BBO # 654507)
Nixon Peabody LLP
100 Summer Street
Boston, MA 02110
(617) 345-1000



**COMMONWEALTH OF MASSACHUSETTS**

MIDDLESEX,ss.

SUPERIOR COURT DEPARTMENT OF
THE TRIAL COURT

PETER GACICIA , individually and on behalf
of a class of similarly situated persons,

Plaintiffs,

vs.

GAF BUILDING MATERIALS CORPORATION,
GAF CORP. AND SAMUEL HEYMAN

Defendants.

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
MIDDLESEX

FEB 11 2005

Civil Action Number:

JURY TRIAL DEMANDED

| | |
|---|---|
| RY TRIAL DEMANDED SCIVIL | 240. |
| 4514A000002/11/05SUR CHARGE | 15. |
| 4514A000002/11/05SECC | 20. |
| 4514A000002/11/05SUMMONS | 15. |

## CLASS ACTION COMPLAINT

### I.    NATURE OF THE ACTION

1.    This action is brought on behalf of a class composed of all individuals and entities
who purchased GAF asphalt shingles or who purchased own buildings or structures in the United
States on which GAF Building Materials Corporation ("GAF") asphalt roofing shingles (hereinafter
"GAF shingles") have been installed, the classes being more specifically described in paragraph 33.

2.    Commencing at some time presently unknown to plaintiffs but believed to be in 1979
or soon thereafter and continuing to the present, GAF has knowingly manufactured, distributed, and
falsely advertised millions of square feet of defectively designed and manufactured asphalt roofing
shingles to roofing contractors and property owners throughout the United States. GAF failed to
adequately design, formulate and test its GAF shingles before distributing them to the Plaintiffs and
the class, and has failed to remove them from the marketplace or take other remedial action after
learning of their defective nature.

3.    GAF's shingles, manufactured during the class period, are uniformly defective and,
when exposed to normal climatic conditions, prematurely split, crack, curl, buckle, develop seal
down problems and otherwise deteriorate. The shingles owned by plaintiffs and class members
either already have manifested these defects (thereby causing damages such as the cost of removing

00004154.W51 ; 1

and replacing the defective shingles) or will manifest these defects prior to the expiration of the applicable written warranty given by GAF. The premature splitting, cracking, curling, buckling and blow-offs of GAF shingles occur at a rate extraordinarily higher than that of other commonly used and non-defective shingles.

4.     GAF has concealed material facts concerning the uniformly defective characteristics of its shingles from the public and has nonetheless continued to market and sell GAF shingles to the public and concealed the existence of thousands of customer claims and complaints regarding the GAF shingle problems.

## II.    JURISDICTION

5.     Plaintiffs seek damages on behalf of themselves and all others similarly situated under the common and statutory laws of the Commonwealth of Massachusetts, and the similar statutory and common laws in effect elsewhere in the United States. In particular, this Court has jurisdiction over the claims for breach of written or implied warranty (as defined in 15 U.S.C. §§ 2301(6) and (7)) under 15 U.S.C. § 2310 (d)(1)(A), because GAF shingles are a "consumer product" as defined in the Magnuson-Moss Consumer Product Warranty Act ("the Act"), 15 U.S.C. § 2301(1), and because defendant is a "supplier" and "warrantor" under 15 U.S.C. §§ 2301(4) and (5). Alternatively, this Court has jurisdiction over the breach of written and implied warranty claims directly under § 2-314(2)(c) of the Uniform Commercial Code ("UCC") adopted by 49 other states (excepting those states that required vertical privity) and the District of Columbia and under La. Civ. Code Art. 2503, 2520 and 2531. This Court also has jurisdiction under the substantively similar unfair or deceptive trade practices statutes of the states included in the Deceptive Trade Practices Subclass as described in paragraph 36(c). The aggregate amount in controversy is in the millions of dollars classwide and is typically several thousand dollars for each plaintiff and individual class member. The individual representative plaintiffs' damages are less than $50,000 each, exclusive of interest and costs. The individual representative plaintiffs do not seek damages greater than $50,000 each. Neither punitive damages nor a statutory award of attorney's fees is sought herein.

00004154.W51 ; 1                                            2

### III.   VENUE

6.    GAF has during the class period conducted business in this County and State and throughout the United States by manufacturing, selling, marketing, and warranting the shingles at issue in this case.

### IV.   THE PARTIES

### (A) THE PLAINTIFF

7.    Plaintiff Peter Gacicia resides in the Commonwealth of Massachusetts. He purchased Timberline® asphalt shingles with a 25 year guarantee manufactured by defendant GAF. Subsequently and within GAF's 25-year written warranty, substantial portions of the shingles had deteriorated badly and the roof had begun to leak, requiring the Plaintiff to incur actual replacement costs of $15,000.

### (B) DEFENDANTS

8.    a.    GAF Building Materials Corporation is a Delaware corporation headquartered in Wayne, New Jersey.  GAF has manufactured and sold asphalt shingles throughout the United States and the Commonwealth of Massachusetts for over fifty (50) years;

b.    GAF Corporation is a Delaware corporation with its principal place of business in Newark, New Jersey. Throughout the Class Period, GAF Corporation has transacted business in the Commonwealth of Massachusetts; and

c.    Samuel Heyman is the owner of GAF Corporation with its principal place of business in Newark, New Jersey. Throughout the Class Period, Samuel Heyman has transacted business in the Commonwealth of Massachusetts.

### V. FACTUAL ALLEGATIONS

9.    Throughout the Class Period, GAF has knowingly manufactured, distributed, warranted, and falsely advertised and marketed defective GAF asphalt shingles that have been

00004154.W51 : 1                                    3

applied to the roofs of property owned by the Plaintiffs and Class Members. GAF marketed its products under the brand names "Standard Self-Sealing", "Nor'easter", "Dubl-Coverage Tite On", "Sentinel", Suburban", "Sovereign", "Royal Sovereign", "Slateline", and "Timberline" (hereinafter collectively "GAF shingles").

10.     Throughout the Class Period, GAF failed to adequately manufacture, formulate, and test the GAF shingles before marketing them to the named Plaintiffs and the Class as a durable and suitable exterior roofing product. GAF has advertised, sold, and distributed to plaintiffs and class members the GAF shingles that they knew or should reasonably have known were defectively designed and manufactured. Furthermore, GAF failed to remove its GAF shingles from the marketplace or to take other remedial action after it knew of the inherent defects of its GAF shingles.

11.     GAF's asphalt shingles prematurely split, crack, curl, buckle, discolor, deteriorate and blow-off (which in turn may cause damage to other structural parts of the class's residences and buildings), and otherwise fail to perform as represented and expressly or impliedly warranted, and/or do not perform in accordance with the reasonable expectations of plaintiffs and class members that such shingles are durable, strong, or superior to other conventional non-defective shingles and are easy to install on personal residences and other realty. Due to GAF's superior knowledge and the latency of the defects, GAF had a duty to the public to disclose the defective nature of the GAF shingles and to not conceal and suppress their defective nature from the plaintiffs.

12.     Throughout the Class Period, the Defendant GAF engaged in a course of conduct to manufacture and distribute and knowingly make or publish false public statements about GAF shingles, which was intended to and did deceive the public and the building industry as to the strength, durability, effectiveness and other properties of GAF shingles. Contrary to the Defendant's representations concerning GAF shingles, they were defectively designed and manufactured and were not, for the reasons stated below, fit for the purposes for which they were to be used.

13.     GAF promoted and advertised its asphalt roofing shingles to the named Plaintiffs and the Class in national consumer and trade magazines and publications representing that its shingles

00004154.W51 ; 1                                4

were superior to other conventional shingles; strong with long term performance; and so durable that they are warranted for 15 years or more to remain free of manufacturing defects for their applicable warranty period.

14.    For instance, in GAF's publication entitled "Shingles Don't Have To Be Organic To Be The Natural Choice", published during the Class Period as defined below, GAF placed the following advertisement for its shingle products, which is typical of GAF's representations in its national publications since 1979 concerning the durability and strength of GAF shingles.

When you consider durability, strength, and handling, today's organic shingles can't compare to fiberglass...Today's fiberglass shingles contain a combination of glass mat, water resistant asphalt and ceramic-coated granules. This combination makes the old industry standard, organic shingle (for many years the only choice), no longer "the shingle of choice". Since a shingle is only as good as the base it is built on, the heart of every GAF Building Materials Corporation fiberglass asphalt shingle is fiberglass mat. On the other hand organic felts, the base for organic shingles, are made of waste paper and wood by-products, which can result in a less consistent shingle. As a result, organic shingles can not be expected to perform as well as fiberglass under adverse conditions such as rain, sleet, ice, snow and harsh winds. Shingles using organic felt are susceptible to moisture attack and can also blister, curl and buckle. Another big advantage -- GAF BMC manufactures glass fibers and glass mats. This allows us total quality control in the manufacturing process. As a result GAF BMC fiberglass shingles have a consistency in quality not offered by shingles made with organic felts....

15.    GAF's representations were false and were either made by GAF with knowledge that they were false or with reckless indifference to the truth. GAF intended for these representations to reach the plaintiffs and the Class and for the plaintiff class to rely upon these representations when purchasing suitable shingles for use in roofing their home or other buildings or in purchasing a home in which GAF shingles had been installed. GAF was in a superior position to know the true facts of the hidden defects of its shingles and its known repercussions based on information that GAF had or was aware of; GAF knew or should have known of the potential damage to consumers, and GAF therefore owed a duty to disclose the fact of the concealed defect to plaintiffs and the class members. These uniform and written representations resulted in increased sales of GAF shingles. All of the above stated representations were uniformly made to all the class members and to the public at large.

00004154.W51 : 1                                5

16.     At all times prior to and during the period GAF manufactured and sold its shingles to the public, GAF knew that tear strength and resistance are critical performance characteristics, in relation to and in determining resistance of its shingles to splitting, cracking, tearing, wind loads and "blow-off".

17.     At all times prior to and during the period GAF manufactured and sold its shingles to the public, GAF also knew, that to resist cracking, its shingles had to have sufficient mechanical integrity and toughness to resist normal stresses that are applied to the shingles on the roof.

18.     Commencing on a date unknown to Plaintiff but believed to be in 1979 or soon thereafter, GAF manufactured, marketed and sold organic based asphalt shingles to the public, including but not limited to the brands Dubl-Coverage Tite On, Nor'easter and Timberline.

19.     At all times prior to and during the Class Period when GAF manufactured and sold organic shingles to the public, including its Dubl-Coverage Tite On, Nor'easter and Timberline brands, GAF knew that its organic shingle products:

      a.     absorbed moisture;

      b.     changed dimensions as a result of swelling of the individual fibers;

      c.     were not manufactured properly and their organic felt mats (made of waste paper and wood by-products) were not adequately saturated with quality asphalts;

      d.     were defective and blistered, curled and buckled; and

      e.     failed to comply with ASTM D225.

20.     GAF ceased manufacturing and marketing its defective organic shingles in 1984.

21.     Commencing on a date unknown to Plaintiffs but believed to be in 1979 or soon thereafter, GAF manufactured, marketed and sold fiberglass based asphalt shingles to the public, including but not limited to the brands Standard Self-Sealing, Nor'easter, Dubl Coverage Tite On, Sentinel, Suburban, Sovereign, Royal Sovereign, Slateline, GAF Wood Line, Timberline and Timberline Ultra.

00004154.W51 ; 1                                    6

22.     At all times prior to and during the class period and during the period GAF manufactured and sold its shingles to the public, including from 1979 through the present date, GAF knew that its fiber glass based asphalt shingles:

a.     did not have adequate tear strength and resistance;

b.     failed to comply with even the minimum tear strength requirements specified in ASTM D-3462 entitled Standard Specification for Asphalt Shingles Made From Glass Felt and Surfaced With Mineral Granules;

c.     did not have a sufficiently strong heavyweight reinforcement mat and therefore did not promote adequate tear resistance, tensile strength, fastener pull-through resistance and flexibility.

d.     did not contain an appropriate level or quantity of loading or mineral stabilizer in the coating asphalt which thereby reduced the durability and pliability of the shingle and increased the stiffness of the shingle;

e.     were not manufactured with durable, pliable and quality asphalts;

f.     were designed and manufactured with a sealant bond which material is excessively rigid and fails to remain flexible and pliable and was not compatible with the low tear resistance of GAF shingles.

23.     GAF gave to plaintiffs and class members a long term written warranty (15 or more years), without telling the class that the shingles would prematurely fail prior to the expiration of the applicable warranty, giving the plaintiffs the false impression that the product was not defective and would not begin to deteriorate only a few years after installation. Further, GAF unconscionably has attempted to exclude the warranty of merchantability because of GAF's failure to disclose that the shingles are defective and not durable or suitable for use, because plaintiffs do not have an opportunity to bargain over the terms of the limited warranty, because the defect is latent and is not discoverable at the time of purchase but instead years later, and because the remedy left to the named Plaintiffs and the class is inadequate and does not meet minimum standards as required by UCC §

2-719 in that the remedy is unconscionable and fails of its essential purpose, in that GAF has refused to honor the warranty and pay the full amount and because the remedy provided is completely inadequate since, the shingles cannot be properly repaired without removing them and installing an entirely different product at a cost in excess of the original purchase price. Since the limitations on remedies and the exclusion of the implied warranty of merchantability (that the shingles are a suitable product in the industry for installation on homes) are unlawful and unconscionable, GAF is obligated to the named Plaintiffs and the class for breach of that warranty and is responsible for the consequential damages that named Plaintiffs and the class have incurred.

24. GAF engaged in a scheme to cover up the true nature of the problems with its shingles. GAF has consistently denied the claims made under its warranty, and GAF has consistently blamed the problems upon the contractor, builder or property owner for allegedly faulty installation or maintenance. Alternatively, GAF, while blaming the contractor or builder and/or owner, would offer some minor assistance that was a very limited portion of its obligation under the written warranty, leaving the owner to bear the remaining cost of replacing the defective shingles. GAF has concealed and suppressed from the plaintiffs and class members that the real problem with the shingles, regardless of the manner of installation, is the defective manufacture of GAF's product.

25. To this day GAF continues in this pattern of concealment and suppression by deliberately and knowingly misrepresenting to the plaintiffs and class members the true nature of the problem. In fact, the vast majority of the plaintiff class is still unaware that GAF shingles have and will continue to prematurely fail due to their defective nature.

26. Plaintiffs are particularly vulnerable to such fraudulent and deceptive practices because they are anxious to protect their homes as best as they can and because of the financial burden imposed upon them to correct the problem.

27. At the time of their sale GAF knew or should have known that GAF shingles were defectively manufactured and that they would split, crack, curl, buckle, discolor and deteriorate, and cause damage to other structural parts of residences, and otherwise not perform as expressly

00004154.W51 ; 1

8

represented and warranted. GAF knew or should have known that these problems were not the result of improper installation, and that regardless of how the shingles were installed, they would not perform in accordance with the reasonable expectations of plaintiffs and class members. On information and belief, GAF had actual knowledge before and at the time of sale of various reports and studies that were not known to the public but which concluded that the asphalt shingles GAF was manufacturing and selling would fail prematurely due to manufacturing and design defects.

28.   In particular, but without limitation, GAF

(a)   Fraudulently and conspiratorially withheld crucial technical and performance information from thousands of builders, roofers and property owners in the United States relating to the failure rate and characteristics of its asphalt shingles as revealed by both testing of the GAF shingles and the numerous complaints lodged with GAF relating to premature failure, discoloration, cracking, and buckling which were occurring throughout the nation;

(b)   Fraudulently and conspiratorially denied any knowledge of any inherent design or manufacturing flaws in its asphalt shingles, despite having actual or constructive knowledge of serious design, manufacturing, and chemical formulation deficiencies of the GAF shingles which were proximately resulting in the premature failure problems complained of throughout the nation;

(c)   Fraudulently and conspiratorially represented and blamed all failures, discoloration, cracking and buckling problems upon improper installation or maintenance, despite having actual or constructive knowledge of serious design, manufacturing, and chemical deficiencies that were inherent in its shingles which were, to the knowledge of GAF, the most probable explanation of the premature failure, discoloration, cracking and buckling problems complained of throughout the nation.

29.   GAF has continued to intentionally conceal and misinform the public as to the defective nature of the GAF shingles and has refused and failed to take the necessary corrective measures to remedy the defective product. Due to its superior knowledge of the defects in its

shingles, GAF had a duty to disclose to the public the defective nature of the shingles and not to conceal and suppress their defective nature. Despite this duty, GAF has continued to represent to the public that its asphalt shingles are particularly appropriate for use on the roofs of homes and other real property of the named Plaintiffs and the class.

30.     To this day GAF refuses to disclose to the public, including plaintiffs and class members, that its asphalt shingles split, crack, curl, buckle and fail when exposed to normal climatic conditions that exist throughout the United States. In fact, many in the plaintiff class are still unaware that GAF shingles have and will continue to prematurely fail due to the defective nature of the manufactuing process, and as a result many class members have replaced the deteriorated shingles with more of the same defective shingles.

31.     GAF has had ample motive to actively conceal the defective nature of GAF shingles because asphalt shingles have been an important contributor to its profits. GAF produces millions of square feet of shingles each year, representing millions of dollars in sales.

32.     The inherent defects in asphalt shingles are latent and self-concealing, especially for homeowners. Even in the exercise of reasonable care, the named Plaintiffs and class members simply cannot discover that such inherent defects exist, and have no way of determining who is responsible for resultant damage. By suppressing the dissemination of information regarding the vulnerability of its shingles to climactic conditions, GAF has intentionally foreclosed Plaintiffs and class members from learning of GAF shingles' latent defects and from pursuing claims against GAF.

33.     By reason of the foregoing, the claims of plaintiffs and class members are timely under any applicable statute of limitations (as tolled by the filing of this complaint) pursuant to the discovery rule and the doctrines of fraudulent concealment and equitable tolling.

## VI. CLASS ACTION ALLEGATIONS

### (A) *The Proposed Classes*:

34.     This action is brought and may properly be maintained as a class action on behalf of Plaintiffs and all others similarly situated who purchased GAF shingles or subsequently purchasers

00004154.W51 ; 1                     10

who currently own a building on which shingles were attached between January 1, 1979 and until the date of final judgment herein or expiration of GAF's applicable written warranty.

35.    Plaintiffs bring this action on their own behalf and in a representative capacity on behalf of a Class consisting of the following four Subclasses defined according to the legal claims asserted. Most members of the overall Class are members of two or more of the four proposed Subclasses.

### (a) IMPLIED WARRANTY SUBCLASS

All persons who purchased GAF shingles or who subsequently purchased buildings on which GAF's asphalt shingles were or are attached, which shingles (1) have already or by the time of final judgment herein split, crack curl, buckle, blow-off, deteriorate or fail or (2) will split, crack, curl, buckle, blow-off, deteriorate or fail prior to expiration of the applicable GAF written warranty, and who have notified GAF of the breach either individually or through the classwide notice of breach which this Complaint constitutes under 15 U.S.C. § 2310(e) and/or UCC § 2-607(3)(a), with this breach of implied warranty of merchantability claim asserted under 15 U.S.C. § 2310(d)(1) or alternatively, to any extent that the Magnuson-Moss Act is found inapplicable, under UCC § 2-314(2)(c).

Excluded from this Subclass are:

(1) personal injury claims;

(2) persons who prior to the filing of this Complaint or prior to final judgment herein have settled their claims with GAF pursuant to the settlement class certified in Coleman v. Gaf Building Materials Corp., Circuit Court of Mobile County, Alabama, Civil Action No. 96-0954;

(3) persons with claims in excess of $50,000;

(4) purchasers in states that at the time of final judgment herein require vertical privity to pursue implied warranty claims, such states presently including, e.g., Alabama, Arizona, New York, Florida, Connecticut, Wisconsin, Kentucky, Indiana, Washington, Iowa, and Utah (as to all owners)

00004154.W51 ; 1                                    11

or California, Georgia, Illinois, North Carolina, Ohio, Oregon, and Texas (as to owners who were not the original purchasers of GAF's asphalt shingles and/or the property to which it was attached); and

(5) purchasers other than "consumers" in Kansas.

The jurisdictions (including the District of Columbia) encompassed by the Implied Warranty Subclass are hereinafter referred to as the "Implied Warranty States".

## (b) WRITTEN WARRANTY SUBCLASS

All persons who purchased GAF's asphalt shingles for their home, whose shingles (1) have already or by the time of final judgment herein split, crack, curl, buckle, blow-off, deteriorate or fail or (2) will split, crack, curl, buckle, blow-ff, deteriorate or fail prior to expiration of the applicable GAF written warranty, and who have notified GAF of the breach either individually or through the classwide notice of breach which this Complaint constitutes under 15 U.S.C. § 2310(e) and/or UCC § 2-607(3)(a), with this breach of written warranty claim asserted under 15 U.S.C. § 2310(d)(1) or alternatively, to any extent that the Magnuson-Moss Act is found inapplicable, under UCC § 2-313.

Excluded from this Subclass are:

(1) the first four groups excluded from the Implied Warranty Subclass;

(2) any persons who have already replaced their rotted or deteriorated shingles without first having given written notification to GAF as required by the terms of GAF's written warranty.

## (c) DECEPTIVE TRADE PRACTICES SUBCLASS

All persons who purchased GAF shingles or who currently own buildings on which GAF's asphalt shingles were or are attached, whose shingles (1) have already or by the time of final judgment herein split, crack, curl, buckle, blow-off, deteriorate or fail or (2) will split, crack, curl, buckle, blow-off, deteriorate or fail prior to expiration of the applicable GAF written warranty term, with this claim asserted under the substantively similar state statutes that either (1) prohibit unfair or deceptive trade practices generally (e.g., Alaska, Connecticut, Florida, Georgia, Hawaii, Kentucky, Louisiana, Maine, Massachusetts, Missouri, Montana, Nebraska, New Hampshire, New Mexico,

New York, North Carolina, Ohio, Rhode Island, South Carolina, Tennessee, Texas, Vermont, Washington, West Virginia, Wyoming, Arizona, Delaware, Illinois, Iowa, New Jersey, and North Dakota) and/or (2) prohibit included but more specifically defined conduct such as representing that goods have characteristics, uses, benefits, or qualities that they do not have or that goods are of a particular standard, quality, or grade if they are of another (e.g., California, District of Columbia, Idaho, Maryland, Michigan, Minnesota, Mississippi, Pennsylvania, and Virginia), including the following additional subgroups: (A) those states that require a showing of scienter (e.g., Arkansas, Colorado, Kansas, Nevada, Oklahoma, Oregon, South Dakota, Utah, and Wyoming), (B) those states that require the showing of some "aggravating factor" other than scienter (e.g., North Carolina and New Jersey), and (C) those states that require proof of reliance, whether or not classwide reliance can be rebuttably presumed (e.g., Arizona, Georgia, and Wyoming).

Excluded from this Subclass are:

(1) the first four groups excluded from the Implied Warranty Subclass;

(2) persons who purchased property to which GAF's shingles were already affixed in states whose deceptive trade practices statutes do not cover "fixtures" (e.g., Florida prior to June 30, 1993 and Indiana);

(3) persons other than "consumers" in states whose deceptive trade practices statutes are limited to consumers who purchase for personal, family, or household purposes (e.g., California, District of Columbia, Georgia, Hawaii, Kansas, Maine, Maryland, Michigan, Mississippi, Missouri, Montana, Ohio, Oregon, Pennsylvania, Rhode Island, Tennessee, Utah, Virginia, and Wyoming);

(4) persons whose claims would be time-barred under state deceptive trade practices statutes or other limitations doctrines that have repose provisions not permitting tolling of the limitations period due to fraudulent concealment, such as one year from discovery but no more than four years from transaction (e.g., Louisiana, Tennessee, New Hampshire, Ohio, and Wyoming); and

## (d) FRAUD SUBCLASS

All persons who purchased GAF shingles or who currently own buildings or real property

located in Alabama, Florida, and/or Indiana to which GAF shingles were or are attached, and whose shingles (1) have already or by the time of final judgment herein split, crack, curl, buckle, blow-off, deteriorate or fail or (2) will split, crack, curl, buckle, blow-off, deteriorate or fail prior to expiration of the applicable GAF written warranty term. Alabama, Florida and Indiana are hereinafter referred to collectively as the "Fraud States." Excluded from this Subclass are the first four groups excluded from the Implied Warranty Subclass.

36.     *Numerosity*.  The members of the proposed Subclasses, being geographically disbursed throughout the United States and numbering in the hundreds of thousands, are so numerous that joinder of all of them is impracticable.

37.     *Typicality*.  Plaintiffs' claims are typical of class members' claims because each plaintiff has experienced splitting, cracking or deterioration of his or her shingles or will do so before expiration of the applicable GAF written warranty term, and by proving their own claims, plaintiffs will presumptively prove the claims of all class members.

38.     *Adequacy of Representation*.  Plaintiffs can and will fairly and adequately represent and protect the interests of the class and have no interests that conflict with or are antagonistic to the interests of class members. Plaintiffs have retained attorneys competent and experienced in class action and consumer defective products law and litigation. No conflict exists between plaintiffs and class members because (a) the claims of the named plaintiffs are typical of the absent members' claims, (b) virtually all of the questions of law or fact at the liability stage are common to the class and overwhelmingly predominate over any individual issues, such that by prevailing on their own claims, plaintiffs necessarily will establish GAF's liability as to all class members, (c) without the representation provided by plaintiffs herein, virtually no class members will receive legal representation or redress for their injuries, (d) plaintiffs and their counsel have the necessary financial resources to adequately and vigorously litigate this class action, and (e) plaintiffs are aware of their fiduciary responsibilities to the class members and are determined diligently to discharge those duties.

00004154.W51 ; 1                                14

39.    **_Common Questions of Law._**  Virtually all of the issues of law in this class action are common to the proposed subclasses and include at least the following:

(a) *Privity.*  None of the Implied Warranty Subclass members (who could not and did not purchase their GAF shingles directly from GAF) are barred from recovery by any lack of vertical privity required by state law for such claims, because that Subclass has been defined to exclude purchasers in such privity states (*see ¶ 39(a)(5) supra*).

(b) *Fitness for Ordinary Purposes.*  The ordinary purposes of GAF shingles include keeping moisture, heat and cold, wind, and other elements out of the house. Under the implied warranty law of each Implied Warranty State, a jury could determine as a matter of *fact* that the premature deterioration of GAF's shingles already experienced or to be experienced by all Implied Warranty Subclass members rendered or will render those shingles unfit for the ordinary purposes for which GAF shingles are used. Under no such state law or legal interpretation would it be necessary for the jury to find or identify *specific* materials, components, or other design "defects" as the *particular cause* of these defective shingles. Rather, state law is unanimous that classwide causation can be established by the fact that GAF shingles did not perform as warranted and that such failure was presumptively caused by GAF e.g., by statistical evidence showing that these shingles failed at an extraordinarily high rate when compared with the failure rates of other nondefective shingles.

(c) *Affirmative Defenses.*  Because the deterioration of class members' GAF shingles will be presumptively shown at the first stage of a bifurcated classwide trial to have been caused by the inherently defective nature of GAF's shingles, any state law affirmative defenses asserted against any individual class member claimants at the second stage (most likely for improper installation or maintenance, whether labeled "product misuse", "contributory negligence", "unintended usage", or "failure to follow instructions") will start with a heavy burden on GAF to rebut the powerful classwide presumption already established. The only potential material variation in state laws governing individual affirmative defenses to liability if the second stage is reached would be that

some states recognize contributory negligence as a complete bar to recover, while most other states recognize various forms of comparative fault. These two standards are not in conflict, in that any challenged claimants from contributory negligence states would be subject to a single second stage jury determination (i.e., if found to be contributorily negligent they do not recover), while claimants from comparative negligence states would have that jury determine (1) whether the claimant was contributorily negligent (if not, the inquiry is over) and (2) if so, by what percentage. Moreover, were it necessary to maintain commonality of legal standards here, plaintiffs could obviate this "variation" by stipulating to a single pro-defense contributory negligence standard.

(d) *Notice of Breach.* With respect to the Implied Warranty Subclass, 15 U.S.C. § 2310(e) provides for a single classwide notice of breach and opportunity to cure (which need not be given until after class certification), and that provision supplants any separate requirements under state law (e.g., UCC § 2-607(3)(a)) that class members separately and individually notify GAF of the warranty breaches alleged herein. Soon after the filing of this Complaint, plaintiffs will have given GAF such classwide § 2310(e) notice of breach. To any extent that 15 U.S.C. § 2310(e) is not dispositive of state law individual notice of breach requirements, classwide UCC § 2-607(3)(a) notice of breach has also been given to defendant both by plaintiffs and by thousands of complaints over the years from individual class members. Moreover, the law of each Implied Warranty State treats the timeliness of such notice as a question of fact, permitting the jury to find on a classwide basis that no consumer class member's failure to give such notice prior to the filing of this or earlier class action Complaints was unreasonably dilatory, given evidence of GAF's fraudulent concealment of its legal responsibility for its defective shingles and the inability of class members acting with due diligence to discover this cause of action against GAF from information generally accessible in the public domain until within one year prior to the filing of this or any earlier class action Complaint. Pursuant to Ala. Code § 8-19-10(e), Cal. Civ. Code § 1782(c), Ga. Code Ann. § 10-1-399(b), Me. Rev. Stat. tit. 5 § 213.1-A, Mass. Gen. Laws ch. 93A § 9(3), and Tex. Bus. & Com. Code § 17.505, plaintiffs have also contemporaneously with the filing of this Complaint given GAF the notice and

00004154.W51 ; 1    16

demand required by those statutes on behalf of the members of the Deceptive Trade Practices Subclass from those states. Upon the expiration of the pre-complaint notice period prescribed by those statutes (e.g., thirty (30) days), plaintiffs will file an Amended Complaint reasserting those states' Deceptive Trade Practices Subclass claims.

(e) *Compensatory Damage Measure.* Under each included state's law, the out-of-pocket cost of repair or replacement (materials and labor) of the property damage caused by the deterioration of GAF's shingles, plus prejudgment interest, is a proper measure of "difference in value" breach of warranty compensatory damages (UCC §§ 2-714 and 2-715) and for recovery by members of the Deceptive Trade Practices Subclass.

(f) *Deceptive Trade Practices Subclass.* As described in the Subclass Definition (¶ 36(c)), the deceptive trade practices claims of all Subclass members are based on the same legal standard--either that (1) the state statute generally prohibits unfair or deceptive trade practices or (2) prohibits representations that GAF shingles have characteristics, uses, benefits, or qualities or meets a particular grade or standard which it does not (which prohibitions would also be encompassed by the general prohibitions of the first group of states). Only three small subgroups have been carved out of this Subclass as a manageable number of sub-subclasses, for which any required additional proofs will necessarily be established by other classwide proofs in this case even if these three sub-subclasses were not included. These are (A) nine states having scienter requirements, but this is also a classwide issue regarding GAF's knowledge which will necessarily be proven for all class members as to the fraudulent concealment and unconscionable implied warranty disclaimer allegations; (B) two states that require some "aggravating factor" in addition to simple or even intentional breach of contract/warranty, a test that will also necessarily be satisfied by classwide proof of GAF's knowing classwide scheme and/or conduct violating other consumer rights; and (C) three states that may require a showing of class members' reliance on GAF's material representations or omissions, but such reliance will be presumptively established on a classwide basis from the obvious materiality of the misrepresentations or from the failure to disclose material facts.

00004154.W51 ; 1                                    17

(g) *Class Action Prohibitions*. Certain state law prohibitions of class action remedies in their own state courts (e.g., Ala. Code § 8-19-10(f), Ga. Code Ann. § 10-1-399, Miss. Code. Ann. § 75-24-15(3), Mont. Code Ann. § 30-13-133(1), and S.C. Code Ann. § 39-5-140(c)) are either procedural and therefore overridden by this Court's class action rule or they are substantive and require exclusion of those states from the Deceptive Trade Practices Subclass, as Alabama has already been so excluded.

(h) *Notice*. Plaintiffs will after class certification propose and implement a plan of individual and publication notice of class action pendency that under the due process and full faith and credit clauses as interpreted by the United States Supreme Court in *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809 (1985), will bind all out-of-state class members to the jurisdiction of this Court.

40. **Common Questions of Fact**. The vast bulk of the possible issues of fact to be determined in this class action, including all questions of fact to be determined at the initial classwide liability stage of this bifurcated proceeding, are common to the claims of all class members, including:

(a) *High Classwide Failure Rates and Classwide Causation.* Not only did these incidents of deteriorating GAF shingles render GAF's shingles unfit for their ordinary purposes (Implied Warranty Subclass) and not having the characteristics, uses, or benefits impliedly or expressly represented (Deceptive Trade Practices Subclass), but the frequency of these failures was so much higher than that experienced by other nondefective shingles as to presumptively establish classwide causation as to all claims. Given the extraordinarily higher failure rate for defendant's shingles, the likelihood is *de minimus* that any given class member's deteriorated shingles were caused by improper installation or owner maintenance, because such intervening causes would only be consistent with defendant's shingle products having approximately the same failure rate as other nondefective shingles types, which typically are installed by similar contractors and roofers and maintained by similar home or other realty owners.

00004154.W51 ; 1                                                                                    18

(b) *Fraudulent Concealment.* Defendant's actual or imputed discovery of the defective nature of their shingles, and defendant's active and knowing concealment of such information from the Subclasses, operated on a classwide basis.

(c) *Inability to Discover.* As a result of defendant's concealment since early on in their marketing of these shingles products, and because no significant revelatory information was obtainable with reasonable effort from the public domain, no class members acting with due diligence could have reasonably discovered information leading them to find good legal cause for the claims asserted herein earlier than one year prior to the filing of this or earlier class action Complaints asserting similar claims.

(d) *Reckless Disregard and Unconscionability.* Defendant's knowing manufacture, marketing, and sale of the subject shingles to class members with concealment of the high failure rate of such products was unconscionable and independently tortious conduct in reckless disregard of the legal rights of all class members.

41.     **Superiority.** A class action is superior to any other available method for the fair and efficient adjudication of this controversy, given that (a) common questions of law and fact overwhelmingly predominate over any individual questions that may arise, such that there would be enormous economies to the courts and the parties in litigating the common issues on a classwide instead of a repetitive individual basis, (b) the size of each class member's individual property damage claim, typically a few thousand dollars, is too small to make individual litigation an economically viable alternative, such that few class members have any interest in individually controlling the prosecution of separate actions (any that do may opt out, and the class definition excludes persons who have already or will before judgment file individual actions), © class treatment is required for optimal deterrence and compensation, (d) despite the relatively small size of individual class members' claims, their aggregate volume, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this case to be litigated as a class action on a cost-effective basis, especially when compared with repetitive individual litigations, and

(e) no unusual difficulties are likely to be encountered in the management of this class action, in that (1) all questions of law or fact to be litigated at the liability stage are common to the class, (2) if plaintiffs do not prevail at the classwide liability stage, the litigation in the trial court will be terminated, and (3) if plaintiffs do prevail at the liability stage, the parties may be able to reach a classwide settlement, thereby obviating any need for second stage individual proceedings on damages and any affirmative defenses raised as to some individual class member claimants.

## COUNT I

### (Fraud by Nondisclosure)

### (Alabama, Florida, and Indiana)

42.     Plaintiffs, on behalf of themselves and all others similarly situated, reallege as if fully set forth each and every allegation contained in the preceding paragraphs, and further allege that GAF's direct and indirect representations through national advertising and product information appearing in consumer and professional magazines regarding the durability of and the quality of GAF shingles like those set forth herein in paragraph 18 were false and misleading, were material facts, were made willfully to deceive, or recklessly without knowledge, or were made by mistake or innocently, and were acted on by plaintiffs to their substantial detriment and injury.

43.     GAF's representations as set forth above regarding the durability, quality, and characteristics of the shingles were willful or reckless misrepresentations of material fact made with the intent to induce plaintiffs to act thereon and plaintiffs did, without knowledge of their falsity, directly or indirectly, justifiably act upon those willful misrepresentations to their injury, as evidenced by their purchase of GAF's shingles or purchase of property on which it was installed.

44.     GAF either knew or should have known since the early 1980's (the exact time is presently unknown to plaintiffs) that its shingles were defectively manufactured and subject to premature failure and splitting, cracking, curling, buckling, deterioration and blow-off and were otherwise not as it was represented or warranted to be by GAF as was alleged above.

45.     GAF was under a duty to disclose this information to the plaintiffs under laws

requiring it not to engage in false and deceptive trade practices and because GAF was in a superior position to know the true state of the facts about the hidden defect and its known repercussions to the plaintiffs upon purchase and installation, because the defect was latent and would not appear for several months or years, and because of the special circumstances associated with the use of the product on plaintiffs' homes and residences. As a result of GAF's fraud and suppression of material facts, the plaintiffs acted to their detriment in purchasing the defective shingles or homes on which they were installed, which they would not have purchased had they been told the truth.

46. As a result of GAF's practices, plaintiffs and class members have suffered actual damages in that they have purchased and installed on homes and buildings roofing shingles that are defective and that:

     (a)     have and will prematurely fail;

     (b)     have and will cause damage to other parts of the building structure; and

     (c)     have and will cause plaintiffs and class members expenses and labor in repairing and replacing the defective GAF shingles and other damages, including diminution of property value, all of which continues and will continue in the future prior to expiration of the applicable GAF written warranty term.

## COUNT II

### (Violation of Consumer Protection Statutes --
### Deceptive Trade Practices Subclass)

47. Plaintiffs, on behalf of themselves and all others similarly situated, reallege as if fully set forth each and every allegation contained in the preceding paragraphs, and further allege that plaintiffs and many class members are consumers who purchased GAF's shingles or homes on which they were installed for personal use. All Deceptive Trade Practice Subclass States have enacted uniform statutes to protect consumers against unfair, deceptive or fraudulent business practices such as those alleged herein.

48. The consumer protection statute of each state of residence of members of the Deceptive Trade Practices Subclass prohibits either (a) unfair or deceptive trade practices generally,

or (b) a specified list of deceptive trade practices, including the representation that goods have characteristics, uses, benefits, or qualities that they do not have or that goods are of a particular standard, quality, or grade if they are another.

49.    By the misrepresentations and non-disclosure of material facts alleged above, GAF deceived and continues to deceive consumers. This conduct constitutes unlawful, unfair, and fraudulent business practices within the meaning of the consumer protection statutes of the state of residence of members of the Deceptive Trade Practices Subclass. In addition, GAF's use of print media to promote the sale of defective shingles through false and deceptive representations as alleged above constitutes unfair competition and unfair, deceptive, untrue, or misleading advertising within the meaning of such state consumer protection statutes. This unlawful, unfair, and fraudulent business practice and false and misleading advertising and unfair competition by GAF continues to present a threat to members of the public. GAF has systematically perpetrated a fraud upon members of the public and refused to admit that they are defrauding the public by this practice, or that GAF intends plaintiffs and class members to be deceived for the sole purpose of enriching GAF.

## COUNT III

### (Breach of Written Warranty -- Written Warranty Subclass Under 15 U.S.C. §§ 2301(6) and 2310(d)(1)(A) and/or UCC § 2-313)

50.    Plaintiffs, on behalf of themselves and all others similarly situated, reallege as if fully set forth each and every allegation contained in the preceding paragraphs, and further allege that GAF has breached its express warranty to the plaintiffs and class members in that GAF shingles are not free of manufacturing defects and otherwise, do not perform as warranted. Furthermore, GAF has failed and refused to honor the terms of its written warranty, causing the warranty to fail of its essential purpose.

51.    Plaintiffs and class members have suffered direct and consequential damages because their GAF shingles were defectively manufactured and resulted in actual damages in that they have purchased and installed on homes GAF shingles that will prematurely fail (and sometimes cause damage to other parts of the building structure) and have caused plaintiffs and class members to

incur expenses, either already or in the future.

## COUNT IV

### (Breach of Implied Warranties -- Implied Warranty Subclass
### Under 15 U.S.C. §§ 2301(7) and 2310(d)(1) and/or UCC § 2-314(2)(c))

52.     Plaintiffs, on behalf of themselves and all others similarly situated, reallege as if fully set forth each and every allegation contained in the preceding paragraphs, and further allege that GAF has breached the implied warranty of merchantability in that GAF shingles were defective and not fit for the ordinary purposes for which such shingles are used; that is, to provide a durable, long lasting, suitable, and aesthetically pleasing exterior protection for residences and other buildings.

## RELIEF REQUESTED

WHEREFORE, plaintiffs on behalf of themselves and all others similarly situated, pray the Court to enter judgment against GAF and in favor of the named Plaintiffs and the class, and to award the following relief:

(a)     order that this action proceed as a class action for damages under Counts I-IV, with appropriate Subclasses and subgroups thereof as described in ¶ 39; and

(b)     enter judgment for plaintiffs and class members for compensatory damages, including prejudgment interest, for breach of written and implied warranty, deceptive trade practices, and fraud by nondisclosure; and

(c)     award class counsel a reasonable fee from the common fund generated hereby.

## JURY DEMAND

Plaintiffs demand that all issues triable by jury be so tried.

DATED: February 11, 2005

Kenneth G. Gilman (BBO #192760)
GILMAN AND PASTOR, LLP
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA 01906
Tel.: 781-231-7850
Fax: 781-231-7840

00004154.W51 ; 1                    23

TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

## COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION

............ MIDDLESEX ............ , ss
[seal]

No. 05 — 493

PETER GACICIA, ET AL.
..............................................., Plaintiff(s)

v.

GAF BUILDING MATERIALS CORPORATION, ET AL.

........................................ , Defendant(s)

## SUMMONS

To the above-named Defendant: Samuel Heyman, President to Accept Service for GAF Building Materials Corporation, 1361 Alps Road, Wayne, NJ 07470

You are hereby summoned and required to serve upon .......... Kenneth G. Gilman, Esquire Gilman and Pastor, LLP.... plaintiff's attorney, whose address is 60 State Street Boston, MA 02109 ........................................., an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at .................................... ........... Middlesex .................................... either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Barbara J. Rouse Suzanne V. DelVecchio Esquire, at ....................................................................

the ...... 6th ........................................ day of ...... May ....................................................

...................., in the year of our Lord ...... two thousand and five

Edward J Sullivan
Clerk

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

FORM NO. SUP. — 001

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

JS 44 (Rev. 11/04)

**CIVIL COVER SHEET** 05 CV 11204 WGY

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Peter Gacicia | GAF Building Materials Corp., et al. |

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

Dennis M. Duggan, Jr. P.C.; Jonathan Sablone; Stephen LaRose
Nixon Peabody LLP, Boston, MA 02110

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1   U.S. Government Plaintiff
- ☐ 3   Federal Question (U.S. Government Not a Party)
- ☐ 2   U.S. Government Defendant
- ☒ 4   Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☒ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

**V. ORIGIN** (Place an "X" in One Box Only)

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**   Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

Brief description of cause:
product liability

**VII. REQUESTED IN COMPLAINT:**   ☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ Greater than $75,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

**VIII. RELATED CASE(S) IF ANY**   (See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE 6/6/05

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

05/09/2005 11:19 FAX 617748....98    US DIST COURT    ☑002

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) _Gacicia v. GAF_____

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

**05 CV 11204 WGY**

___    I.    160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.

___    II.   195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
             740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.          for patent, trademark or copyright cases

_✓_   III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
             315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
             380, 385, 450, 891.

___    IV.   220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,
             690, 810, 861-865, 870, 871, 875, 900.

___    V.    150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

_____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

   YES ☐    NO ☒

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)

   YES ☐    NO ☒

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

   YES ☐    NO ☒

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

   YES ☐    NO ☒

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

   YES ☒    NO ☐

   A.   If yes, in which division do all of the non-governmental parties reside?

        Eastern Division ☒        Central Division ☐        Western Division ☐

   B.   If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

        Eastern Division ☐        Central Division ☐        Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

   YES ☐    NO ☒

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME _Dennis M. Duggan, Jr. P.C., Jonathan Sablone, Stephen LaRose_

ADDRESS _Nixon Peabody LLP 100 Summer Street  Boston, MA 02110_

TELEPHONE NO. _617-345-1000_

(CategoryForm.wpd -5/2/05)